**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NICHOLAS LOHMAN,

     Plaintiff,

       v.

DURYEA BOROUGH, et al.,

     Defendants.

CIVIL ACTION NO. 3:05-CV-1423

(JUDGE CAPUTO)

<u>**MEMORANDUM**</u>

Presently before the Court is Defendants' Motion for Summary Judgment.  (Doc. 44.)  For the reasons set forth below, the Defendants' motion will be granted in part and denied in part.  The Defendants' motion for summary judgment will be granted as to any Fourth Amendment claims, as they are inapplicable.  The Defendants' motion will also be granted as to the official capacity claims against Defendants Dommes, Morreale, Groblewski, Orkwis, Webb, Yager, and Orlowski, as those claims are covered by the claims against Duryea Borough.  The Defendants' motion will also be granted as to the Fourteenth Amendment post-deprivation claim, as the Plaintiff received sufficient process in his arbitration pursuant to the Collective Bargaining Agreement.  The Defendants' motion will be granted as to the Fourteenth Amendment pre-deprivation process claim, as Plaintiff has failed to demonstrate sufficient evidence of a liberty interest, and the Plaintiff received sufficient process in the post-deprivation hearing. The Defendants' motion will also be granted as to the two state claims.  However, the Defendants' motion will be denied as to the First Amendment claims for retaliation based upon the right to speech, association, and petition, as material questions of fact exist on those claims.

As a federal question is before the Court pursuant to Title 42 of the United States Code, section 1983, the Court exercises jurisdiction over this action pursuant to section 1331 of Title 28 of the United States Code ("federal question").  The Court has supplemental jurisdiction over the Plaintiff's state claims pursuant to 42 U.S.C. § 1367.

## BACKGROUND

The Plaintiff in this case is Nicholas Lohman, who was hired as a part-time police officer with Duryea Borough on August 11, 1999, and became a full-time police officer in February of 2001.  (Defs.' Statement of Material Facts in Support of Mot. For Summ. J. ¶ 1, Doc. 45.)  In February 2003, the Duryea Borough terminated the employment of Police Chief Charles Guarnieri.  (*Id.* ¶ 8.)  After the termination of Chief Guarnieri, Duryea had two (2) full-time police officers.  (*Id.* ¶ 10.)  However, prior to Chief Guarnieri's termination, there had been at least three (3) full-time police officers in Duryea.  (Pls.' Counterstatement of Material Facts ¶ 10, Doc. 51.)  The hours normally worked by the third full-time officer were filled by the part-time police officers.  (*Id.*)  Defendants assert that in the 2004 fiscal year budget, the budget provided funding for only two (2) full-time police officers.  (Doc. 45 ¶ 11.)  Similarly, Duryea's budget provided for the funding of two (2) full-time police officers in the 2005 fiscal year budget.  (*Id.* ¶ 12.)  On December 28, 2004, Duryea Borough learned that Chief Guarnieri had been reinstated as Police Chief of Duryea Borough.  (*Id.* ¶ 13.)  Upon Chief Guarnieri's reinstatement, the Duryea Borough Council resolved to furlough the least senior full-time police officer due to budget constraints.  (*Id.* ¶ 14.)  That officer was Plaintiff Sergeant Nicholas Lohman.  (*Id.*)

2

Plaintiff counters that there was an allotment for the police chief's salary in another section of the budget in case of his return.  (Doc. 51 ¶¶ 11, 12.)

On February 6, 2005, Plaintiff Lohman filed a grievance pursuant to the Collective Bargaining Agreement challenging his termination.  (Doc. 45 ¶ 15.)  On September 18, 2006, Arbitrator DeTreux of the American Arbitration Association denied Lohman's grievance in its entirety.  (*Id.* ¶ 16.)

On July 18, 2005, Plaintiff filed a Complaint alleging civil rights violations of his First, Fourth, and Fourteenth Amendment rights, as well as violations of state law.  (Doc. 1.)  The Defendants filed their Answer to the Complaint on August 29, 2005.  (Doc. 8.)  On December 13, 2006, the Defendants filed an Amended Answer.  (Doc. 41.)  Defendants filed the present Motion for Summary Judgment on December 22, 2006.  (Doc. 44.)  This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a

genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Liberty Lobby*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

## DISCUSSION

### I.   *Res Judicata*

Defendants argue in the motion for summary judgment that the Plaintiff's claims should be dismissed on the grounds of *res judicata.*  However, the Supreme Court held in *McDonald v. City of West Branch, Michigan*, 466 U.S. 284 (1984) that federal courts are not obligated to accord res judicata or collateral estoppel to an arbitrator's decision.  In *McDonald*, the plaintiff police officer initially brought a grievance through the collective bargaining process after his termination.  *Id.* at 285-86.  The arbitrator ruled against McDonald, but he did not appeal the decision.  *Id.* at 286, 287.  Rather, he filed a Section 1983 action for violations of his First Amendment rights.  *Id.* at 287.  The Court then considered whether the arbitration pursuant to the collective bargaining agreement obligated the federal court to apply res judicata or collateral estoppel to the Section 1983 claims.  The Supreme Court defined collateral estoppel, holding that when a "' court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'"  *Id.* at 287 n.5 (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)).

The Court noted that "arbitral factfinding is generally not equivalent to judicial factfinding," and therefore "in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial."  *Id.* at 291, 292.  Thus, the Court held that

>according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights that the statute is designed to provide.  Therefore, we hold that in a § 1983 action, a federal court should not afford res judicata or collateral estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a

5

collective bargaining agreement.

*Id.*  The Defendants attempt to distinguish *McDonald* with the Eastern District of

Pennsylvania's *Brody v. Hankin*, 299 F. Supp. 2d 454 (E.D. Pa. 2004).  In *Brody*, the

court held that the plaintiffs were barred from bringing their claims in federal court after

an arbitration decision was rendered on the basis of *res judicata.  Id.* at 459.  However,

the complaint in *Brody* dealt with causes of action for breach of fiduciary duty and breach

of contract, after the plaintiffs had gone to arbitration on breach of a partnership

agreement.  *Id.*  The case at bar is analogous to *McDonald*, in that a police officer later

brought a Section 1983 action subsequent to his grievance pursuant to a collective

bargaining agreement.  The Supreme Court does not permit *res judicata* or collateral

estoppel to bar a Section 1983 claim following arbitration pursuant to a collective

bargaining agreement. Although the arbitrator "'decided an issue of fact or law necessary

to its judgment,'" this decision does not preclude this Court from considering the Plaintiff's

claims, as a collective bargaining agreement's arbitration does not create collateral

estoppel or *res judicata* for a later Section 1983 claim.   *McDonald*, 466 U.S. at 287 n.5

(quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)).

## II.    Section 1983 Claims

Plaintiff alleges that Defendants violated section 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom or usage . . . subjects, or causes to be
> subjected, any citizen of the United States or other persons
> within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured. . . .

Plaintiff further alleges that Defendants are liable under Section 1983 for violations of

6

their constitutional rights under the First Amendment, Fourth Amendment, and

Fourteenth Amendment based upon their actions under color of law.

Defendants argue that the claims against Defendants Dommes, Morreale,

Groblewski, Orkwis, Webb, Yager, and Orlowski, in their official capacities, be dismissed.

The Defendants motion for summary judgment against these Defendants in their official

capacities will be granted, as "[o]fficial-capacity suits . . . 'generally represent only another

way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v.

Graham*, 473 U.S. 149, 165-66 (1985) (quoting *Monell v. New York City Dep't of Social

Servs.*, 436 U.S. 658, 690 n.55 (1978)).  The Defendants' motion for summary judgment

on official capacity claims against Defendants Dommes, Morreale, Groblewski, Orkwis,

Webb, Yager, and Orlowski will be granted.

A.      Fourth Amendment Claim

In the statement of jurisdiction, Plaintiff alleges violations of the  "First, Fourth and

Fourteenth Amendments" to the United States Constitution.  (Compl. ¶ 13, Doc. 1.) The

Fourth Amendment to the United States Constitution, which protects against

unreasonable searches and seizures, has no applicability to this case.

B.      Count I - Fourteenth Amendment Due Process

In Count I of the Amended Complaint, Plaintiff Lohman alleges that he was denied

both pre-deprivation and post-deprivation process pursuant to the Fourteenth

Amendment.  To establish a cause of action for a procedural due process violation,

Plaintiff must first prove that a person acting under color of state law deprived him of a

protected property or liberty interest; and second, he must show that the procedures

available to him failed to provide him with due process of law.  *See, Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

       1.      *Post-Deprivation Process*

      The Third Circuit Court of Appeals has repeatedly held that, "in cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . . those procedures satisfy due process requirements 'even if the hearing conducted by the Employer . . . [is] inherently biased.'" *Leneny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999) (quoting *Dykes v. Southeastern Pa. Trans. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995)).  Thus, "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, *unless* those procedures are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116 (emphasis added).

      In response to his furlough, Plaintiff Lohman elected to file a grievance pursuant to the Collective Bargaining Agreement, and proceeded through the grievance process to arbitration.  As the Plaintiff proceeded through arbitration, post-deprivation process was both available and utilized.  Plaintiff has presented no evidence that the arbitration proceedings were inadequate.  Furthermore, although violations of post-deprivation process are alleged in the Plaintiff's Amended Complaint, the Plaintiff states in his brief that he is not seeking a claim for post-deprivation due process.  Therefore, Defendants' motion for summary on the post-deprivation due process claim will be granted.

      2.      *Pre-Deprivation Process*

      Plaintiff Lohman also alleges that he was denied constitutionally required pre-

deprivation procedures pursuant to the Fourteenth Amendment.  To establish a cause of action for a pre-deprivation procedural due process violation, the Plaintiff must prove both that a person acting under color of state law deprived him of a protected property or liberty interest; and that the procedures available to him failed to provide him with due process of law.  *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

a.    Property Interest

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).  In Pennsylvania, police forces are protected under the Police Tenure Act, 53 P.S. § 811 *et seq.* (protecting police forces of less than three full-time officers) and  the section on Civil Service for Police and Firemen, 53 P.S. § 46171 *et seq*. (protecting police forces of three full-time officers or more), both of which provide extensive procedural protections to a police officer.

Plaintiff received a letter from the Duryea Borough Council, which consistently referred to the employment decision as a "furlough."  (Letter to Officer Lohman from Ann Dommes, January 21, 2005, Doc. 46 Ex. 8.)  The section on Civil Service for Police and Firemen states that "[n]o person shall hereafter be suspended, removed or reduced in rank as a paid employee in any police force, except in accordance with the provisions of this subdivision."  53 P.S. § 46171.  Similarly, the Police Tenure Act on removals states that "No person employed as a regular full time police officer . . . shall be suspended, removed or reduced in rank except for the following reasons. . . . " 53 P.S. § 812.  Thus, the Pennsylvania legislature has given public employees a property interest in their

9

employment.  *McAndrew v. State Civil Serv. Comm'n*, 736 A.2d 26, 30 (Pa. Commw. Ct. 1999) (finding that the Civil Service Act gives public employees an enforceable expectation of continued employment).  Such a furlough could be deemed to be a removal within the context of state law and for the purposes of a property interest.

Both code sections create the right to demand a public hearing upon suspension or dismissal and the right to appeal the results of a public hearing to the Pennsylvania Court of Common Pleas. 53 P.S. § 814, 815, 46191.  The Civil Service Act also creates the right to request a hearing in the event of a reduction in rank.  53 P.S. § 46191. However, whether the code provides for a hearing is irrelevant, as the inquiry into whether the Plaintiff's procedural due process rights were violated cannot stop at the question of whether Defendants followed state law, as "federal constitutional standards rather than state statutes define the requirements of procedural due process." *Robinson v. Via*, 821 F.2d 913, 923 (2d Cir. 1987).

Assuming the Plaintiff has demonstrated a cognizable property interest, he must satisfy the three-step balancing test as to whether the deprivation occurred without due process of law.  The factors to be weighed are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In this case, the Plaintiff's private interest is an interest in his employment as a member of the Duryea Borough Police Force.  This deprivation is not as substantial as in

10

*Loudermill*, where the employee faced a final termination.  470 U.S. at 538. In

comparison, the Supreme Court noted that a temporary suspension without pay is an

insubstantial deprivation compared to the termination of *Loudermill*.  *Gilbert v. Homar*,

520 U.S. 924, 932 (1997).  *Gilbert* emphasizes that in determining whether process is

due, courts must take into account the length and finality of the deprivation.  *Id.*  (citing

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)). Plaintiff's deprivation in this

case is similar to that of *Gilbert*.   The Plaintiff was eligible for unemployment

compensation in the event he did not find employment.  (Doc. 46 Ex. 8.)  Furthermore,

the Plaintiff was eventually reinstated after the resignation of Captain Haduck, pursuant

to 53 P.S. § 46190, which states "in the event the said police force . . . shall again be

increased the employees furloughed shall be reinstated in order of their seniority in the

service." (Lohman Dep. 25:21 - 26:1, Apr. 27, 2006, Doc. 45-16.)  *See also* 53 P.S. §

46190.   Plaintiff Lohman only faced a temporary change in employment similar to the

suspension without pay in *Gilbert.*  Furthermore, the Court in *Gilbert* noted that so long as

the employee received a sufficiently prompt post-deprivation hearing, the lost income of a

suspension would be insubstantial.  *Id.*  Under the reasoning of *Gilbert*, if the Plaintiff

here received a prompt post-deprivation hearing, the lack of a pre-deprivation hearing

would be insubstantial.

       In comparison, the Government has an interest in reducing the size of the police

force in times of necessity.  The Commonwealth has articulated this interest in Section

46190 of the Civil Service for Police and Firemen Act, which states "[i]f for reasons of

economy or other reasons it shall be deemed necessary by any borough to reduce the

number of paid employees of the police . . ., then such borough shall apply the following

procedure."  State courts have noted that the balance of interests is in the favor of the

government in cases of the furlough of an employee.

> The furlough of an employee is based on lack of funds or lack of work and is premised on concerns for efficient workplace operation rather than removal from the job because of personal wrongdoing on the part of the individuals furloughed. In the context of a furlough action the balance of interests shifts.  The employee's need to defend himself against allegations of wrongdoing is absent and the employer's interest in an economically efficient workplace is more likely to involve broader concerns than those engendered by the removal of a single unsatisfactory employee.  Each furloughee, if given the opportunity to contest the grounds for furlough in a *Loudermill*-type proceeding, could unduly impede an employer's efforts towards greater efficiency.  On balance, a *Loudermill*-type hearing is not warranted in the context of a furlough action.

*Martin v. State Civil Serv. Comm'n*, 741 A.2d 226, 230 n. 5 (Pa. Commw. Ct. 1999)

The final factor requires the Court to consider the risk of erroneous deprivation and the value of any additional procedures. The risk of erroneous deprivation is not high.  The Plaintiff was entitled to receive unemployment benefits in the event he did not find a job. Furthermore, if at any time the Borough was rehiring, he would be first to be rehired. Thus, although there was a deprivation of his employment, the risk of erroneous deprivation was not high.  The Plaintiff received prompt post-deprivation process, and therefore the risk of erroneous deprivation was low.  Furthermore, the value of additional procedures would not be great, as the Plaintiff already had numerous procedural options. The Plaintiff could utilize either the procedures set forth in the Borough Code, or could file a grievance through the Collective Bargaining Agreement.  The Supreme Court specifically stated that due process does not always require a prior hearing.  *Gilbert*, 520 U.S. at 930.  The Court further held that "where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."  *Id.* (citations omitted).

In weighing the factors to determine whether due process of law would be satisfied by a pre-deprivation hearing, the Court holds that such a hearing is unnecessary.  The Plaintiff received a post-deprivation hearing in the form of an arbitration pursuant to the grievance procedure of the Collective Bargaining Agreement.  A pre-deprivation hearing is unnecessary because the Plaintiff's interest is insubstantial, the government's interest is important, the burden on the government to provide a prior hearing would be great, and a prompt post-deprivation hearing satisfies the requirements of procedural due process.  Therefore, the Defendants' motion for summary judgment will be granted as to the Fourteenth Amendment property interest claim.

    b.    Liberty Interest

"An employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a 'charge against [the individual] that might seriously damage his standing and associations in the community . . ., for example, that he had been guilty of dishonesty, or immorality' or (2) 'imposes on him a stigma of other disability that foreclosed his freedom to take advantage of other employment opportunities.'" *Robb v. City of Philadelphia*, 733 F.2d 286, 293-94 (3d Cir. 1984) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)).  "Stigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Id.*  Thus, in the public employment context, "a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)).  It is required that the Plaintiff satisfy the "stigma-plus" test in order to successfully demonstrate a liberty interest pursuant to the Fourteenth Amendment.

It is clear that the Plaintiff's liberty interest is not based on a charge that may

damage his standing in the community.  Rather, the Plaintiff suggests that the

employment action was based upon his speech, his union activity, or his petition.  In

determining whether there was stigma to reputation, the "government action must first

involve a publication that is substantially and materially false." *Ersek v. Twp. of*

*Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996) (citing *Codd v. Velger,* 429 U.S. 624, 627-

29 (1977); *Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 82 (3d Cir.

1989)).  Furthermore, the disputed or false statements must harm the plaintiff.  *Fraternal*

*Order*, 868 F.2d at 84.  The Plaintiff has failed to present evidence of injury to his

"reputation, honor, or integrity." *Id.* at 83.   The Plaintiff has not demonstrated that the

Defendants made any false statements regarding him.  Rather, he asserts his

reputational injury based upon his furlough by the Defendants.  Such a reputational injury

is not recognized as a liberty interest pursuant to the Fourteenth Amendment.  Therefore,

the Defendants' motion for summary judgment will be granted with respect to the

Plaintiff's Fourteenth Amendment liberty interest claim.

C.     First Amendment Retaliation

Plaintiff also alleges First Amendment retaliation based upon three theories.  The

Plaintiff alleges in his Complaint that the Defendants retaliated against him for engaging

in speech, associating with the union, and filing a petition.  To properly allege an action

for First Amendment retaliation, a public employee must satisfy three elements: (1) that

plaintiff engaged in conduct or speech protected by the First Amendment; (2) that the

government responded with retaliatory action sufficient to deter a person of ordinary

firmness from exercising his First Amendment rights; and (3) that the protected activity

caused the retaliation. *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir.

2006).

14

_____1.    *Count II - Speech*

_____Plaintiff alleges in his Complaint that he engaged in speech "on Union matters, including but not limited to, contract proposals for 2006, Former Chief Guarnieri, Jr. inclusion in the CBA, as well as other matters of public concern."  (Compl. ¶ 23, Doc. 1.) Plaintiff also alleges that he was retaliated for engaging in protected speech on January 10, 2005, when he sent the 2006 CBA proposal and a letter of intent to negotiate the Police's Collective Bargaining Agreement as the union liaison.  (*Id.* ¶ 25.)

    a.    Speech Protected by First Amendment

    Although a public employer may constitutionally limit some speech in the workplace, employees retain the right to speak on matters of public concern without fear of retaliation.  *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001).  The first element in a First Amendment retaliation claim for the right to free speech requires that the plaintiff demonstrate that he engaged in protected speech, and that such speech was a matter of public concern.  *Connick v. Myers,* 461 U.S. 138, 147 (1983).  The Plaintiff's speech is also subject to a balancing test, and the speech is only protected if it can be shown that the public interest in favor of the expression outweighs the government employer's counterveiling interest in provided efficient and effective services to the public. *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885 (3d Cir. 1997) (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist.*, 391 U.S. 563 (1968)).

    "A public employee's speech involves a matter of public concern if it can be 'fairly considered as relating to any matter of political, social or other concern to the community.'" *Baldassare v. State of New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).  Such an inquiry requires the court to consider the content, form, and context of the speech.  *Id.* "The content of the speech may involve a matter of public concern if it attempts 'to bring

to light actual or potential wrongdoing or breach of public trust on the part of government officials.'" *Id.* (quoting *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993)). However, "speech intended to air personal grievances is not" generally protected speech. *Swineford v. Snyder County*, 15 F.3d 1258, 1271 (3d Cir. 1994).

Plaintiff Lohman was involved in speech associated with Collective Bargaining, including negotiations and contract proposals. (Doc. 50 Ex. A.)  In *Crane v. Yurick*, 287 F. Supp. 2d 553 (D.N.J. 2003), the plaintiff's speech involved a letter discussing the negotiation of a new collective bargaining agreement.  The court in *Crane* noted that, as the speech was related to the plaintiff's union activities, and was an element of public concern.  *Id.* at 560.  The court held that "'speech arising in the context of union organization efforts has long been held to be a matter of public concern.'" *Id.* (quoting *McGill v. Bd. of Educ.*, 602 F.2d 774, 778 (7th Cir. 1979)).

In determining whether the public interest in the speech outweighs the government interest, considerations include the time, manner, place and context of the expression. *Swartzwelder v. McNeilly,* 297 F.3d 228, 235 (3d Cir. 2002).  Other considerations include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."  *Id.*  The public interest in allowing the negotiation of a collective bargaining agreement by a union is greater than any potential harm to the public employer.

Plaintiff Lohman also alleges that his speech regarding the status of Chief Guarnieri was protected speech.  However, the Plaintiff has failed to demonstrate what speech was made regarding Chief Guarnieri, besides the assistance that the Plaintiff

provided in the Chief's grievance procedure.  Therefore, the Plaintiff's claim for the First

Amendment retaliation for the right to free speech may only be based upon the

negotiations and contracting done on behalf of the union.

      b.    Ordinary Firmness and Substantial Factor

      The Plaintiff must establish that the protected activity was a substantial factor in

the alleged retaliation.  *Id.*  In order to constitute retaliation within the meaning of the

second prong, the action must be sufficient to deter a person of ordinary firmness from

exercising his First Amendment rights.  *Thomas v. Independence Township*, 463 F.3d

285, 296 (3d Cir. 2006).  To succeed on this second prong, Plaintiff does not have to

show "but-for" causation; rather, he must show only that "the exercise of [his] First

Amendment rights played some substantial role in the relevant decision."  *Suppan v.

Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000).  "The effect of the alleged conduct on the

employee's freedom of speech need not be great in order to be actionable, but it must be

more than *de minimus*."  *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal

quotation marks omitted).  However, "[e]ven 'an act of retaliation as trivial as failing to

hold a birthday party for a public employee,' if 'intended to punish her for exercising her

free speech rights,' may be actionable if sufficient 'to deter a person of ordinary firmness'

from exercising his or her First Amendment rights."  *O'Connor v. City of Newark*, 440 F.3d

125, 127 (3d Cir. 2006) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir.

2000) (citing *Rutan v. Republican Party*, 497 U.S. 62, 76 n.8 (1990))).  The Third Circuit

Court of Appeals further held that the threshold for a First Amendment retaliation claim is

very low and "a cause of action is supplied by all but truly de minimus violations."  *Id.*

(citing *Suppan*, 203 F.3d at 234-35).

      The retaliatory act alleged to Plaintiff's speech relating to union is the furlough of

the Plaintiff.  The relevant issue is whether a person of ordinary firmness would be deterred by a furlough from further exercising his or her right to free speech.  There is question of material fact as to whether a furlough would deter a person of ordinary firmness from speaking out.

        The second prong of the First Amendment retaliation inquiry further requires the Plaintiff to demonstrate that the protected speech was a substantial factor in the furlough of the Plaintiff.  To succeed on the substantial factor element, Plaintiff does not have to show "but-for" causation.  *Suppan*, 203 F.3d at 236.  Furthermore, "substantial factor" does not mean the "dominant" or "primary" factor.  *Id.* at 235.  Therefore, the activity may be a substantial factor even if a defendant shows some other factor was the but-for cause.  *Id.*

        The Plaintiff further argues that part-time officers, with less seniority than the Plaintiff, should have been furloughed first, in accordance with state law.  However, in defining the police force, the state exempted "any extra police serving from time to time or on an hourly or daily basis."  53 P.S. § 46195(4).  Therefore, part-time officers are exempted from the provisions requiring furloughing of the least senior officer.  The police force in Section 46195 is defined as "the members of which devote their normal working hours to police duty."  Therefore, the Plaintiff cannot rest his argument of causation on the fact that less senior part-time officers were not furloughed.

        The Plaintiff has presented evidence that the Plaintiff's speech activities were the cause of the alleged retaliation.  Mayor Keith Moss testified that he believed that Plaintiff Lohman was furloughed in part because of his assistance in Chief Guarnieri's grievance. (Moss Dep. 7:10-18, July 18, 2006, Doc. 50 Ex. 21.)  Moss also testified in agreement with a statement that Plaintiff Lohman was furloughed because of union activities such as

negotiating the collective bargaining agreement.  (Moss Dep. 27:4-9, Doc. 50 Ex. 21.)

Therefore, there is question of material fact as to whether the protected activity was a substantial or motivating factor in the furlough of the Plaintiff.

c.      Same Action in Absence of Protected Conduct

After consideration of the first two elements of the retaliation test, the burden of persuasion shifts to the defendant, who "may defeat plaintiff's claim by demonstrating that the same action would have taken place even in the absence of the protected conduct." *San Filippo*, 30 F.3d at 430-31 & n.7.

The Defendants have presented evidence that they furloughed the Plaintiff due to financial difficulties in the Borough.  (Morreale Dep. 49:8-50:9, Doc. 50 Ex. 17; Dommes Dep. 41:20-42:3, Apr. 18, 2006, Doc. 50 Ex. 18.)  Testimony elicited in depositions stated that the Borough's budget only provided for the salaries of two police officers.  (Morreale 74:10-15, Doc. 50 Ex. 17; Dommes Dep. 41:20-42:3, Doc. 50 Ex. 18.)  However, the Plaintiff has presented evidence that prior to his furlough, the Defendants hired a number of street workers full-time for garbage collection purposes.  (Dommes Dep. 52:11-53:3, Doc. 50 Ex. 18.)  Plaintiff argues in its brief, that if the budget were in dire straights, the Defendants would not have hired seven (7) full-time street workers.  The Defendants counter that it did not cost any more money to hire the full-time workers compared to the number of part-time workers they had in the past.  (Morreale Dep. 33: 14-19, Doc. 50 Ex. 17.)

Therefore, there is also a question of material fact as to whether the Defendants would have engaged in the same action in the absence of the protected conduct. Therefore, summary judgment on this claim is inappropriate at this time.

2.      *Count III - Association*

Plaintiff further alleges that the Defendants violated his First Amendment rights by retaliating against him for his affiliation with the union, the Fraternal Order of Police, and his assistance in union matters.  In order to show a violation of Plaintiff's right to freedom of association, Plaintiff Lohman must prove that the Borough retaliated against him because of his union activities.

a.      Protected Activity

*Schlichter v. Limerick Twp.*, Civ. A. No. 04-CV-4229, 2006 WL 2381970 (E.D. Pa. Aug. 14, 2006) noted that the Third Circuit Court of Appeals has not yet determined if the "public concern" test and the *Pickering* balance applies to First Amendment right to association.  *Id.* at *8.  However, the Third Circuit Court of Appeals has stated that "efforts of public employees to associate together for the purpose of collective bargaining involve associational interests which the First Amendment protects from hostile state action."  *Labov v. Lalley*, 809 F.2d 220, 222-23 (3d Cir. 1987).  Thus, Plaintiff Lohman's exercise in associating for purposes of negotiating the collective bargaining agreement is a protected activity as described by the Third Circuit Court of Appeals in *Labov*.

b.      Ordinary Firmness and Substantial Factor

The retaliatory act alleged to Plaintiff's speech relating to Plaintiff's association with the union is the furlough of the Plaintiff.  The relevant issue is whether a person of ordinary firmness would be deterred by a furlough from further exercising his or her right to associate.  There is question of material fact as to whether a furlough would deter a person of ordinary firmness from exercising his First Amendment right.

As stated previously, Mayor Moss testified that he believed that Plaintiff Lohman was furloughed based upon his negotiations for a collective bargaining agreement as a

union liaison.  (Moss Dep. 27:4-9, Doc. 50 Ex. 21.)  Therefore, there is a question of

material fact as to whether Plaintiff's association with the union was a substantial or

motivating factor in the alleged retaliation.

> c.  Same Action in Absence of Protected Conduct

As stated in previously in the section on First Amendment retaliation based upon

the right to free speech, the Defendants have presented evidence that Plaintiff Lohman

would be furloughed even in the absence of protected conduct, due to the Borough's

fiscal situation.  As a question of material fact has been presented with regard to whether

this action would occur in absence of protected conduct, summary judgment is

inappropriate at this time.

> 3.  *Count IV - Petition*

Plaintiff Lohman also alleges violations of his First Amendment right to petition due

to retaliation that occurred when he assisted in the filing of a grievance for Chief

Guarnieri.  (Compl. ¶¶ 32-34, Doc. 1.)

> a.  Protected Activity

Although, in the employment context, a plaintiff ordinarily must show that his

speech was a matter of public concern to qualify it as protected activity under the First

Amendment, *see Connick*, 461 U.S. 138, the Third Circuit Court of Appeals has held that

this requirement is inapplicable where the speech related to the right to petition.  *Id*., *see*

*San Filippo v. Bongiovanni*, 30 F.3d 424, 434-43 (3d Cir. 1994), *cert. denied*, 513 U.S.

1082 (1995).  In *San Filippo*, the Third Circuit Court of Appeals held that a prima facie

retaliation claim only requires that a plaintiff show that his lawsuit is not a sham.  *San*

*Filippo*, 30 F.3d at 434-43.  *San Filippo* held that "[t]he mere act of filing a non-sham

petition is not a constitutionally permissible ground for the discharge of a public

employee." *Id.* at 443.

The Plaintiff testified that he assisted with the grievance of Chief Guarnieri. (Lohman Dep. 34:10-35:22, Apr. 27, 2006, Doc. 45-16.)  It is well-settled that a petition in the form of filing a grievance pursuant to a collective bargaining agreement is protected activity within the ambit of the First Amendment's petition clause.  *San Filippo*, 30 F.3d at 434-43.  Although the grievance was not filed upon his own behalf, this does not disqualify the Plaintiff's right to petition.  Plaintiff Lohman assisted with Chief Guarnieri's grievance as a union liaison.  (Lohman 35: 11-13, Doc. 45-16.)  The petition in question was not a sham, and therefore the petition qualifies as protected speech.

> b.      Ordinary Firmness and Substantial Factor

The retaliatory act alleged to Plaintiff's speech relating to Plaintiff's petition is the furlough of the Plaintiff.  The relevant issue is whether a person of ordinary firmness would be deterred by a furlough from further exercising his or her right to petition.  There is question of material fact as to whether a furlough would deter a person of ordinary firmness from exercising this First Amendment right.

As stated previously, Mayor Moss testified that he believed that Plaintiff Lohman was furloughed in part based upon his assistance with Chief Guarnieri's grievance. (Moss Dep. 7:10-18, Doc. 50 Ex. 21.)  Therefore, there is a question of material fact as to whether Plaintiff's association with the union was a substantial or motivating factor in the alleged retaliation.

> c.      Same Action in Absence of Protected Conduct

As stated in previously in the section on First Amendment retaliation based upon the right to free speech, the Defendants have presented evidence that Plaintiff Lohman would be furloughed even in the absence of protected conduct, due to the Borough's

fiscal situation.  As a question of material fact has been presented with regard to whether this action would occur in absence of protected conduct, summary judgment is inappropriate at this time.

### III.    Count V - Publicity Given to a Private Life

*Harris by Harris v. Easton Publishing Co.*, 483 A.2d 1377 (Pa. Super. 1984) noted that the elements of the tort of publicity given to a private life are: (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of legitimate concern to the public.  *Id.* at 1384 (citing *Brown v. Mullarkey*, 632 S.W.2d 507 (Mo. App. 1982); *Forsher v. Bugliosi*, 608 P.2d 716 (1980)).

Plaintiff Lohman has failed provide evidence as to what "private facts" were made public that were not of a legitimate concern of the public.  Furthermore, although violations of publicity given to a private life are alleged in the Plaintiff's Amended Complaint, the Plaintiff states in his brief that he is not seeking a claim publicity given to a private life.  Therefore, Defendants' motion for summary on the state claim of publicity given to a private life claim will be granted.

### IV.    Count VI - Wrongful Discharge in Violation of Public Policy

"It should be noted that, as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship."  *Paul v. Lankenau Hosp.*, 569 A.2d 346, 348 (Pa. 1990) (citing *Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974)).  "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Id.* (citing *Clay v. Advanced Computer Applications*, 559 A.2d 917, 918 (Pa. 1989)).

However, the Plaintiff in this case is not an at-will employee.  In *Phillips v. Babcock*

*& Wilcox*, 503 A.2d 36 (Pa. Super. 1986), the court considered "whether a civil action for the tort of wrongful discharge can be maintained by a union employee whose employment relationship is governed by a collective bargaining agreement."  The court held that an employee covered by a collective bargaining agreement could not bring a cause of action for wrongful discharge.  *Id.* at 37.  The court noted that a union employee was not without recourse, even when the discharge violated public policy.  *Id.*  The collective bargaining agreement would provide protection in such a case.  *Id.* Furthermore, the court held that public policy favors the right of parties to enter contracts, including collective bargaining agreements.  *Id.*  The court further noted that, "[i]n the instant case, the union and the appellee in their agreement decided the remedies that would be available, and provided that those remedies would be final and binding."  *Id.*

In this case, the Collective Bargaining Agreement states that "No full time police officer covered by this agreement shall be discharged, suspended or demoted except for 'just cause.'" (Doc. 50 Ex. O Art. 17.)  The Plaintiff was clearly protected by the terms of the agreement, as in *Phillips,* which provided that the employee could not be discharged without "proper cause."  *Phillips*, 503 A.2d at 37.  Numerous courts have followed *Phillips* in holding that employees subject to a collective bargaining agreement may not bring a wrongful discharge claim in Pennsylvania. *See, e.g., Raczkowski v. Empire Kosher Poultry,* Inc., No. Civ. A. 1:04-CV-312, WL 1273591, at *2 (M.D. Pa. 2005); *Ferrell v. Harvard Indus., Inc.*, No. Civ. A. 00-2707, 2001 WL 1301461, at *9-10 (E.D. Pa. 2001); *Ross v. Montour R. Co.,* 516 A.2d 29, 32 (Pa. Super. 1986).

As the Plaintiff in this case is not an at-will employee, and is subject to the terms of the Collective Bargaining Agreement, he has not cause of action for wrongful discharge, and the Defendants' motion for summary judgment will be granted on this claim.

**CONCLUSION**

Construing the facts in a light most favorable to Plaintiff, the Court will grant in part and deny in part Defendants' motion for summary judgment.  The Defendants' motion will be granted with respect to the Fourth Amendment claim, the Fourteenth Amendment pre-deprivation and post-deprivation claims, and the state law claims for publicity given to private life and wrongful discharge.  The Defendants' motion will be denied with respect to the First Amendment claims for retaliation based upon the rights to speech, association, and petition.

An appropriate order shall follow.


November 29, 2007                                    /s/ A. Richard Caputo
Date                                                A. Richard Caputo
                                                    United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NICHOLAS LOHMAN,

    Plaintiff,

       v.

DURYEA BOROUGH, et al.,

    Defendants.

NO. 3:05-CV-1423

(JUDGE CAPUTO)

## <u>ORDER</u>

**NOW**, this ___29th___ day of November, 2007, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 44) is **GRANTED** in part and **DENIED** in part as follows:

1.    Defendants' motion will be **GRANTED** with respect to the Fourth Amendment claims.

2.    Defendants' motion will be **GRANTED** with respect to the Fourteenth Amendment claim for post-deprivation process in Count I.

3.    Defendants' motion will be **GRANTED** with respect to the Fourteenth Amendment claim for pre-deprivation process in Count I.

4.    Defendants' motion will be **DENIED** with respect to the First Amendment claim for violation of the right to free speech in Count II.

5.    Defendants' motion will be **DENIED** with respect to the First Amendment claim for violation of the right to freedom of association in Count III.

6.    Defendants' motion will be **DENIED** with respect to the First Amendment claim for violation of the right to freedom of petition in Count IV.

7.    Defendants' motion will be **GRANTED** with respect to the claim for publicity given

to private life in Count V.

8.      Defendants' motion will be **GRANTED** with respect to the claim for wrongful

        discharge in violation of public policy in Count VI.

9.      Defendants' motion will be **GRANTED** with respect to the claims against

        Defendants Dommes, Morreale, Groblewski, Orkwis, Webb, Yager, and Orlowski

        in their official capacity.

                                              /s/ A. Richard Caputo
                                              A. Richard Caputo
                                              United States District Judge