**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NICHOLAS LOHMAN,

    Plaintiff,

      v.

DURYEA BOROUGH, et al.,

    Defendants.

NO. 3:05-CV-1423

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Plaintiff Nicholas Lohman's motion for attorneys' fees and costs.  (Doc. 109.)  For the reasons set forth below, Plaintiff's petition will be granted in part and denied in part.  Plaintiff's counsel will be awarded thirty thousand dollars ($30,000.00) in attorney's fees for her work and the work of her assistants.  Plaintiff will be awarded four-thousand, two-hundred and fifty-one dollars and seventy-seven cents ($4251.77) in costs.

## BACKGROUND

Plaintiff Nicholas Lohman brought an action against Duryea Borough, Duryea Borough Council, Ann Dommes, Lois Morreale, Frank Groblewski, Edward Orkwis, Robert Webb, Audrey Yager, and Joan Orloski alleging violations of the procedural component of the Fourteenth Amendment, First Amendment retaliation claims, publicity given to private life, and wrongful discharge. (Compl. Doc. 1.)  In its November 29, 2007 Memorandum and Order, the Court granted Defendants' motion for summary judgment on the Fourteenth Amendment due process claims, the claim for publicity given to private

life, and the wrongful discharge claim.  (Mem. & Order, Nov. 29, 2007, Doc. 56. )  A jury

trial was held on the remaining claims for First Amendment retaliation.  Defendants

Orwkis and Morreale were dismissed from the case on a Rule 50 motion after the close

of Plaintiff's case.  The jury then rendered a verdict on April 23, 2008 in favor of Plaintiff

Lohman, for his First Amendment retaliation claim with respect to his assistance in filing a

grievance, against Defendants Duryea Borough, Ann Dommes, Frank Groblewski,

Audrey Yager, and Joan Orloski.  (Doc. 102.)  The jury found in favor of Defendant

Robert Webb, however, on Plaintiff's claim of retaliation with respect to the assistance in

filing a grievance.  (Doc. 102.)   The jury found in favor of all Defendants on Plaintiff

Lohman's claims for First Amendment retaliation with respect to his union contract

negotiations.  (Doc. 102.)  For Plaintiff's successful claims, the jury awarded damages for

lost wages in the amount of seven-thousand, three-hundred and twenty dollars

($7320.00) against Defendants Duryea Borough, and one-thousand, two-hundred and

twenty dollars ($1220.00) each against Ann Dommes, Frank Groblewski, Audrey Yager,

and Joan Orloski. (Doc. 102.)  The jury also awarded one dollar ($1.00) in nominal

damages for damages other than wage loss against Defendants Duryea Borough, Ann

Dommes, Frank Groblewski, Audrey Yager, and Joan Orloski.  (Doc. 102.)  On July 1,

2008, the Court granted in part Plaintiff's motion for prejudgment interest.  (Doc. 120.)

        In the present motion, Plaintiff requests attorneys' fees and costs in the amount of

one-hundred and twelve-thousand, eight-hundred and eighty-three dollars and seventy-

three cents ($112,883.73).  (Doc. 109.)  No other post-trial motions are pending, and no

appeals have been taken.  Therefore, the Court will decline Defendants' request to defer

the ruling on attorney's fees.  The motion is fully briefed and ripe for disposition.

**DISCUSSION**

The Court may award reasonable attorney fees and costs to the prevailing parties in § 1983 cases.  *See* 42 U.S.C. § 1988(b).  Plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).  However, "[t]his is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Id.*

I.      **Attorney's Fees - Reasonable Hours and Reasonable Fees**

The United States Supreme Court has held that the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stetson*, 465 U.S. 886, 888 (1984).  This amount is known as the "lodestar" figure, which is presumed to be the reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Counsel*, 478 U.S. 546, 565 (1986); *Pennsylvania v. Delaware Valley Citizens' Counsel*, 483 U.S. 711, 730-31 (1987).

In calculating the reasonable rate, the Court looks to the prevailing market rates in the relevant community.  *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).  The Court should considered the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Maldonado v.*

*Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The prevailing party bears the burden of demonstrating that the requested hourly rates are reasonable.  *Id.*

The Court must also determine whether the number of hours spent on the litigation was a reasonable number of hours.  The Court "should review the time charged, decide whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citations omitted).  Thus, a trial court will "exclude from this initial fee calculation hours that were not reasonably expended on the litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).   Thus, using the lodestar methodology, the Court can calculate a reasonable attorney's fee.  Here, Plaintiff suggests a rate of three-hundred dollars ($300.00) per hour, for a total of three-hundred and fifty-six (356) hours.

A.    *Reasonable Hours*

Defendants argue that the number of hours requested by Plaintiff Lohman should be further reduced as a number of these hours overlap with the case of *Guarnieri v. Duryea Borough, et al.*  Defendants also argue that a number of hours should be reduced as inappropriate, such as time spent speaking to the press.  Finally, Defendants argue that some of Plaintiff's time entries are excessive, and therefore should be reduced.  The district court is to exclude from its fee calculation hours that were not "reasonably expended."  *Hensley*, 461 U.S at 434.  Therefore, the Court will address Defendants' arguments in turn.

1.    Overlap with *Guarnieri* Case

First, Defendants argue that a number of Plaintiff's hours are duplicative of the

*Guarnieri v. Duryea Borough, et al.* case.  Plaintiff has submitted a document detailing

eighty-eight (88.00) hours of work in the year 2006 done in support of both Plaintiff

Lohman and the companion case of Charles Guarnieri.  Plaintiff admits that these eighty-

eight (88.00) hours of work were done in support of both cases, and Defendants object to

a full recovery of these hours so as not to duplicate fees.  Plaintiff requests that all fees

be granted to either Lohman or Guarnieri, and that the fee request not be split in half.

However, to split these hours in half is the most logical and fair way to deal with these

fees.  If the clients were paying the fees direclt,y neither client would be charged the full

amount for work done in support of the two (2) cases; counsel would likely charge each

client half of the full amount.  Therefore, the Court will treat the fees in the manner in

which the clients would be treated. *See Pub. Interest Research*, 51 F.3d at 1188. Such a

reduction would not be a "global" reduction, as suggested by the Plaintiff.  Rather, it is a

reflection of the way in which a client would be billed.  The number of hours will be

divided in half, and Plaintiff's fees for hours worked on both Lohman and Guarnieri will be

reduced to forty-four (44.00) hours.

　　　Defendants also indicate that an additional fifteen and eight-tenths (15.80) hours

of Ms. Pollick's time should be reduced as duplicative of the *Guarnieri* case.  Attorney

Pollick has indicated that eighty-eight (88.00) hours of her work were duplicative.  But,

her list of duplicative hours only considers work done in the year 2006.  She lists no

duplicative work for the years 2005, 2007, or 2008.  The Court has reviewed the specific

objections Defendants have made to duplicative time entries.  The Court finds that the

complained of time in 2005 is duplicative of the *Guarnieri* case.  The hours billed to

Lohman were also billed to Guarnieri, for the same amount of time and with the same

description.  Therefore, the 2005 hours complained of will be reduced by fifty percent

(50%).  The hours will be reduced from two and four-tenths (2.40) hours to one and two-

tenths (1.20) hours.

Defendants also claim that a number of hours in March and April 2008 were

duplicative.  After comparing the hours submitted for the *Guanrieri* and *Lohman* cases,

the Court notes that the hours that were included in both time sheets were the two (2.00)

hours on March 24, 2008, the two-tenths (0.20) hours on March 26, 2008, and the one

(1.00) hour on April 3, 2008.  The other hours complained of were not listed in the

*Guarnieri* time sheets, and therefore are not duplicative.  Therefore, the Court will only

reduce hours on those three (3) days, from three and two-tenths (3.20) hours to one and

six-tenths (1.60) hours.

In total, the Court will reduce Plaintiff's hours by forty-six and eight-tenths (46.80)

hours based on duplicativeness.

2.      Inapplicable Hours

Second, Defendants argue that Plaintiff has requested attorney's fees for time that

is inapplicable to the Plaintiff's case.  The contested time includes telephone calls with

the press and correspondence regarding the case of Charles Guarnieri.  "'Hours that

would not generally be billed to one's own client are not properly billed to an adversary.'"

*Maldonado*, 256 F.3d at 184 (quoting *Pub. Interest Research,* 51 F.3d at 1188).

Generally, press communications are not compensable.  *See Heavens v. Golfview*

*Estates, Inc.*, Nos. 96 C 1294, 96 C 1318, 1997 WL 156486 (N.D. Ill. Mar. 31, 1997)

(holding that generally press communications are not compensable, unless instigated by

the opposing party).  Therefore, the Court will not consider any time that Plaintiff's

counsel spent speaking with the press.  The number of hours claimed by Plaintiff for time with the press is two and nine-tenths (2.90) hours.  This time will not be considered in Plaintiff's request for attorney's fees.

Defendants also note that several entries are inapplicable to Plaintiff Lohman's case, and only apply to the case of Charles Guarnieri.  Specifically, the Defendants point to correspondence regarding health care enrollment forms, a call regarding an appointment with Charles Guarnieri, and travel to Wilkes-Barre for jury selection.  The issue of healthcare enrollment was not raised in the *Lohman* case, and is only applicable to the *Guarnieri* case.  Therefore, seven-tenths (.70) hours of time claimed regarding healthcare enrollment will be disregarded.  Similarly, the telephone call to Charles Guarnieri regarding his appointment also goes to the *Guarnieri* case, and that two-tenths (.20) hours of time will be disregarded.  Finally, the one (1.00) hour of time logged for travel to and from Wilkes-Barre for jury selection on April 7, 2008 will be disregarded, as only the *Guarnieri* jury was chosen on April 7th.

Therefore, the Court will disregard a total of four and eight-tenths (4.80) hours of time listed by the Plaintiff as inapplicable.

3.      Excessive Hours

Defendants further argue that a number of Plaintiff's time entries are excessive. First, Defendants argue that the time Attorney Pollick worked on the trial dates is excessive.  Ms. Pollick requests fees for 15.60 hours on April 18, 2008, 18.60 hours worked on April 19, 2008, 17.00 hours worked on April 20, 2008, 18.00 hours worked on April 21, 2008, and 19.40 hours worked on April 22, 2008.

Plaintiff argues that the number of hours requested on these dates is not

7

excessive as "Plaintiff's counsel does not take breaks, nor leave the courthouse during the trial day for lunch.  Plaintiff's counsel is forced to burn the midnight oil since she has to prepare for all witnesses and argument because she stands alone at trial."  (Pl.'s Br. at 15, Doc. 118.)  Although the Court notes that Attorney Pollick was the only attorney representing the Plaintiff, the time requested on the days of trial is excessive.  The Court finds that a fourteen (14.00) hour day during the day of trial is appropriate.  Therefore, for April 18 through April 22, the Court will consider fourteen (14.00) hours per day.  This is a reduction of eighteen and six-tenths (18.60) hours, from eighty-eight and six-tenths (88.60) hours to seventy (70.00) hours.

Defendants also note that Plaintiff's counsel asserts she worked thirteen and one-tenth (13.10) hours on April 6, 2008.  (Doc. 109 Ex. A.)  However, Plaintiff's counsel also asserted in her time sheets for the *Guarnieri* attorney's fees petition that she worked eleven and one-half (11.50) hours in support of *Guarnieri*.  (*Guarnieri v. Duryea Borough*, *et al.*, 05-CV-1422, Doc. 122.)  Thus, Plaintiff is asserting she worked over twenty-four and six-tenths (24.60) hours in *one day*.  This is not possible.  Therefore, the Court will reduce the requested hours on April 6, 2008 by seven and one-tenth (7.10) hours to five (5) hours.

Defendants also argue that Plaintiff's time spent on the opposition to Defendant's summary judgment motion was excessive.  Plaintiff's counsel asserts that she spent twenty-four (24) hours preparing the brief in opposition.  Defendants argue that this is unreasonable.  However, the Court disagrees, and finds that twenty-four (24) hours spent in preparation of an opposition to a summary judgment motion is not unreasonable.

Defendants also argue that fourteen (14.00) hours spent in preparation for voir dire

8

on April 6, 2008 and April 20, 2008 is excessive.  The Court agrees.  The Court will reduce the amount of hours for voir dire from fourteen (14.00) hours to four (4.00) hours, a reduction of ten (10.00) hours.

Finally, Defendants argue that excessive time was listed for May 16, 2006 and September 14, 2006.  Defendants argue that Plaintiff's counsel submitted time sheets reflecting that she worked on attorney's fees motions in the *Guarnieri* case on those dates.  However, the time listed on those two (2) dates were submitted on the time sheet that Plaintiff's counsel agreed was done in support of both the *Lohman* and *Guarnieri* cases.  Therefore, those hours have already been reduced as duplicative, and need not be also considered as excessive.

The Court will reduce the Plaintiff's hours by thirty-five and seven-tenths (35.70) hours due to the excessive nature of the hours claimed.

4.      Total Reduction in Hours

Plaintiff requested fees for a total of three-hundred and fifty-six (356) hours.  The Court will reduce this number based upon duplicativeness, inapplicability, and excessiveness.  First, the Court will reduce the number of hours by forty-six and eight-tenths (46.80) hours for duplicativeness.  Second, the Court will reduce the number of hours by four and eight-tenths (4.80) hours for inapplicability.   Third, the Court will reduce the number of hours by thirty-five and seven-tenths (35.70) due to excessiveness.  In total, the Court will reduce Plaintiff's request by eighty-seven and three-tenths (87.30) hours.  The Court will permit a total of two-hundred and sixty-eight and seven-tenths (268.70) hours.

*B.      Reasonable Fee*

_____Defendants also dispute the reasonableness of the hourly rate requested by

Plaintiff Lohman's counsel.  Plaintiff Lohman's attorney charges three-hundred dollars

($300.00) per hour.  (Pollick Decl. ¶ 11, May 6, 2008, Doc. 109 Ex. H.)  In support of her

rate, Attorney Pollick noted her qualifications.  She is admitted to practice before the

Supreme Court of the United States, the Pennsylvania Supreme Court, the Supreme

Court of New Jersey, the United States Court of Appeals for the Third Circuit, the United

States District Courts for the Eastern and Middle Districts of Pennsylvania, the United

States District Court for the District of New Jersey, and other local courts.  (*Id.* ¶ 1.)  She

received her Masters of Law, LLM, in Trial Advocacy from Temple University's Beasley

School of Law in May 2002.  (*Id.*)   Ms. Pollick received her law degree from the

University of Pittsburgh in 1999.  (*Id.*) [1]

        Ms. Pollick also mentioned her other qualifications.[2]   Ms. Pollick is currently an

Adjunct Professor at King's College, where she teaches future human resource

managers about civil rights laws.  (*Id.* ¶ 5.)  Ms. Pollick also teaches Employment and

Labor Law at King's College, which she has done for four (4) semesters.  (*Id.* ¶ 6.)  Ms.

---

[1]     Ms. Pollick states in her declaration that she graduated from Gerry
        Spence's Trial Lawyers College in August 2007.  (*Id.* ¶ 2.)  The Court
        notes that Gerry Spence is a renowned trial lawyer.  However, the Court
        will not consider this fact in its determination of Ms. Pollick's fees, as the
        Court has no information regarding the curriculum or program structure.

[2]     Prior to obtaining her law degree, Ms. Pollick was employed as a Human
        Resource Representative for almost four (4) years.  (*Id.* ¶ 3.)  She is a
        member of the Society of Human Resources ("SHRM"), and was certified
        as a Professional in Human Resources ("PHR").  (*Id.* ¶ 4.)  Although Ms.
        Pollick lists these qualifications, they have no bearing on the petition for
        attorney's fees.

Pollick's previous employment has included work as a law clerk to the Pennsylvania Human Relations Commission and as an associate at Lenahan & Dempsey. (*Id.* ¶¶ 7, 8.) Ms. Pollick currently operates her own law office, which she has done for eight (8) years. (*Id.* ¶ 17.) She currently focuses her practice on employment discrimination claims and constitutional violations. (*Id.* ¶ 9.)

"Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado*, 256 F.3d at 184. The district court "should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). Here, the Plaintiff "bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." *Id.* (quoting *Washington v. Philadelphia Cty. Ct. Of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984))). The court should start with the attorney's usual billing rate, but this rate is not dispositive. *Id.*

Attorney Pollick notes that she works on a contingent fee basis, which should also effect the level of her fee. Ms. Pollick submitted a portion of her fee agreement with Mr. Lohman, but that contingent fee is not reflected in the document. (Doc. 118.) The document states "Counsel's hourly rate is $300.00, and is adjusted annually. Client agrees that such rate is reasonable for attorneys with the skill and experience of Counsel for this type of case." (*Id.*) Ms. Pollick did not provide the terms of her contingency arrangement, therefore, the Court cannot use her contingent fee agreement in its

11

consideration.

Along with her billing rate of three-hundred dollars ($300.00) per hour, Ms. Pollick submits the rates of two (2) attorneys in the area, Mr. Barry H. Dyller and Mr. Paul M. Jennings.  (Doc. 109 Exs. C, D, G.)  Mr. Dyller charges three-hundred and thirty dollars ($330.00), and Mr. Jennings charges three-hundred dollars ($300.00).  (Doc. 109 Exs. C, D, G.)

Defendants argue that Plaintiff's rate of three-hundred dollars ($300.00) is unreasonable, and that the comparison of Attorney Pollick to Attorneys Dyller and Jennings is unsubstantiated.  Ms. Pollick submits a letter from Mr. Jennings to Ms. Pollick.  (Doc. 109 Ex. D.)  In this letter, Mr. Jennings states that his client " has been paying three-hundred dollars ($300.00) per hour." (*Id.* at 2.)  However, the letter does not outline any of Mr. Jennings' qualifications, which makes it impossible to compare the reputation, skill, and experience of Ms. Pollick to Mr. Jennings.

Plaintiff also submitted an affidavit of Mr. Dyller from 2006, which stated that his hourly fee was three-hundred and thirty dollars ($330.00) per hour.  (Doc. 109 Ex. C, at 2.)  In that affidavit, Mr. Dyller outlined his credentials.  (*Id.* at 8.)  Mr. Dyller graduated with honors from Boston University School of Law in 1985.  (*Id.*)  He practiced for seven (7) years in New York City working on major commercial disputes.  (*Id.*)  He founded his current firm in 1992, which handles civil rights litigation.  (*Id.*)  He has tried eighty-six (86) cases, eighty-three (83) before a jury and three (3) bench trials.  (*Id.*)  Defendants assert that Mr. Dyller is a well-established litigator in the Scranton/Wilkes-Barre area with numerous years of experience in trial litigation.

In response, Plaintiff's counsel asserts that her reputation, skill and experience is

comparable to that of Mr. Dyller.  She notes that she has her own law firm, which she has run for eight (8) years, and that she works on a contingency fee basis.  However, this is where the similarities end.  Mr. Dyller has been in practice approximately fifteen (15) years longer than Ms. Pollick.  He has tried eighty-six (86) cases.  The number of trials in which Ms. Pollick participated is unknown.  Ms. Pollick asserts that her experience as a human resource professional, work as a college professor, L.L.M. degree from Temple, and attendance at the Gerry Spence Trial Lawyers College make up for the difference in years of experience.  However, the Court disagrees. First, Ms. Pollick's work as a human resource professional has no bearing on her claim for attorney's fees.  Second, her attendance at the Gerry Spence Trial Lawyers College cannot be considered, as the Court has no record of the curriculum or requirements of the school.  Third, although Ms. Pollick has additional education from Temple, this additional value does not demonstrate that she has similar experience, skill, and reputation to Mr. Dyller.  Finally, although Ms. Pollick works as a college professor, which Mr. Dyller does not, such work does not bridge the gap between their levels of experience.

Defendants's counsel submitted declarations regarding their own experience in support of their argument that Attorney Pollick's rate is not representative of the similar services in the community.  Attorney Karoline Mehalchick stated in her declaration that she charges one-hundred and twenty-five dollars ($125.00) for civil rights cases, and one-hundred and seventy dollars ($170.00) in all other matters. (Mehalchick Decl. ¶¶ 9, 10, May 27, 2008, Doc. 115 Ex. A.)  Ms. Mehalchick has been a partner at Oliver, Price & Rhodes since January 2008.  (*Id.* ¶ 1.)  Her previous experience includes work as an associate attorney at Oliver, Price, & Rhodes and as a law clerk to the Honorable Trish A.

Corbett of the Lackawanna County Court of Common Pleas.  (*Id.* ¶¶ 2, 3.)  Ms.

Mehalchick is a 2001 graduate of Tulane University School of Law, and is admitted to

practice in the Pennsylvania Supreme Court, the United States Court of Appeals for the

Third Circuit, the United States Court of Appeals for the Eighth Circuit, the United States

District Court for the Middle District of Pennsylvania, and the United States District Court

for the Eastern District of Missouri.  (*Id.* ¶¶ 5, 6.)  She currently teaches a graduate class

on Health Law at Marywood University.  (*Id.* ¶ 7.)

Attorney Joseph O'Brien also submitted a declaration outlining his qualifications.

(O'Brien Decl., May 27, 2008, Doc. 115 Ex. B.)  Mr. O'Brien is a partner at Oliver, Price &

Rhodes, where he has worked in that capacity for twenty-eight (28) years.  (*Id.* ¶ 2.)  He

previously served as a law clerk to the Honorable Richard P. Conaboy, President Judge

of the Court of Common Pleas of Lackawanna County and the Honorable William J.

Nealon, Chief Judge of the United States District Court for the Middle District of

Pennsylvania.  (*Id.* ¶ 2.)  He graduated with his juris doctor  in 1975 from Seton Hall

University with *cum laude* honors in 1975. (*Id.* ¶ 3.)  Mr. O'Brien was a professor at

Marywood University for thirty (30) years, teaching business law, taxation, and health law,

among other classes.  (*Id.* ¶ 6.)  He also taught at the University of Scranton for three (3)

years.  (*Id.* ¶ 7.)  Mr. O'Brien charges an hourly rate of one-hundred and twenty-five

dollars ($125.00) per hour for civil rights cases, and two-hundred and twenty-five dollars

($225.00) per hour on all other cases.  (*Id.* ¶¶ 10, 11.)

Plaintiff's counsel argues that the declarations by Defendants are not indicative of

the rates of similar services, because these declarations were made by members of the

defense bar.  Plaintiff argues that the Court should only consider the service of other

14

attorneys in the plaintiffs bar in the community.  The court is not limited to the defense bar or the plaintiffs bar in determining fees - rather, the court must consider the attorney's experience and skill, and compare it to rates for similar services by attorneys with similar skill, experience, and reputation.  *Rode*, 892 F.2d at 1183.  The skill and experience of Ms. Pollick is more closely aligned with Ms. Mehalchick, than with Mr. Dyller, Mr. Jennings, or Mr. O'Brien.  Ms. Mehalchick and Ms. Pollick have been in practice for a similar number of years; both teach college classes; and both are involved with civil rights suits.  A rate of three-hundred dollars ($300.00) per hour is not appropriate for Ms. Pollick's skill, reputation, and experience in the community.  Therefore, the Court will award Ms. Pollick fees in the amount of two-hundred and fifteen dollars ($215.00).

*C.     Lodestar Calculation*

1.     Lodestar for Ms. Pollick

In order to calculate the lodestar, the Court must find the product of the reasonable hours times the reasonable fee.  The Court found a reasonable number of hours to be two-hundred and sixty-eight and seven-tenths (268.70) hours.  The reasonable fee was found to be two-hundred and fifteen dollars ($215.00).  Therefore, the lodestar is calculated to be fifty-seven thousand, seven-hundred and seventy dollars and fifty cents ($57,770.50).

Plaintiff also requests one-thousand eight-hundred dollars ($1,800.00) for preparation of this fee petition.  This would be six (6) hours times her requested rate.  As the Court found that the reasonable rate would be two-hundred and fifteen dollars ($215.00), her lodestar for fees for preparation of the petition is reduced to one-thousand, two-hundred and ninety dollars ($1290.00).

15

_____The total lodestar inclusive of this fee petition for Ms. Pollick's fees is calculated to be fifty-nine thousand and sixty dollars and fifty cents ($59,060.50). _____

### 2.      Legal Assistant Lodestar

Plaintiff also submits costs for work by legal assistants in the amount of four-thousand two-hundred and twenty-two dollars and fifty cents ($4,222.50).  Ms. Pollick states that seven and nine-tenths (7.90) hours were done in support of both the *Lohman* and *Guarnieri* cases.  Defendants object to these hours as duplicative. For the reasons previously stated, the work done in support of both cases will be reduced by fifty percent (50%).  Therefore, the work done by the legal assistants will be reduced by three and ninety-five-hundredths (3.95) hours.

In 2006, legal assistants did five and one-tenths (5.10) hours of work.  In 2007, they did one and four-tenths (1.40) hours of work.  In 2008, the legal assistants did forty-one and nine-tenths (41.90) hours of work.  Therefore, the legal assistants totaled fifty-two and thirty-five-hundredths (52.35) hours of work on this case.  Defendants do not dispute the other hours worked by the legal assistants as excessive, duplicative, or otherwise inapplicable.  Plaintiff requests a fee of seventy-five dollars ($75.00) per hour for legal assistants.  Defendants do not dispute this fee rate.  Therefore, the lodestar for the legal assistants is the product of fifty-two and thirty-five-hundredths (52.35) hours of work times seventy-five dollars ($75.00).  The lodestar for legal assistants is calculated to be three-thousand, nine-hundred and twenty-six dollars and twenty-five cents ($3,926.25).

### 3.      Other Considerations

_____"The product of reasonable hours times a reasonable rate does not end the

inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S at 434.  The Court will now consider these additional considerations._

  D. *The Twelve <u>Johnson</u> Factors*

  A court may consider other factors besides the reasonable rate times reasonable hours to adjust the fee upwards or downwards.  *Hensley*, 461 U.S. at 434.  In *Hensley,* 461 U.S. at 429-30, the Supreme Court held that "[t]he amount of the fee, of course, must be determined on the facts of each case. On this issue the House Report simply refers to twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)."  The twelve (12) factors are:

  (1) the time and labor required;

  (2) the novelty and difficulty of the questions;

  (3) the skill requisite to perform the legal service properly;

  (4) the preclusion of employment by the attorney due to acceptance of the case;

  (5) the customary fee;

  (6) whether the fee is fixed or contingent;

  (7) time limitations imposed by the client or the circumstances;

  (8) the amount involved and the results obtained;

  (9) the experience, reputation, and ability of the attorneys;

  (10) the "undesirability" of the case;

  (11) the nature and length of the professional relationship with the client; and

  (12) awards in similar cases._____

*Id.* at 430 n.3 (citing *Johnson*, 488 F.2d at 717-19).  Many of these factors are subsumed

in the rate times hours calculation, bu they may be considered as part of a court's consideration of overall fees.  *Id.* at 434.  *Hensley* noted that "the amount involved and the results obtained" is relevant to a fee award, and that "[t]he importance of this relationship is confirmed in varying degrees by other cases cited approvingly in the Senate Report."  *Id.* at 430.  The Supreme Court found that appropriate fees result when the fees "are adequate to attract competent counsel, but . . . do not produce windfalls to attorneys."  *Id.* at 430 n.4.  _____

  *E. Apportionment*_____

_____Defendants argue that the number of hours requested by Plaintiff Lohman should be apportioned based upon the number of successful claims.  The *Hensley* Court considered a case where plaintiffs brought multiple claims in one lawsuit.  *Hensley*, 461 U.S. at 434-35.  The Court noted that a fee award should be limited when a lawsuit brings different claims of relief based upon different facts and legal theories.  *Id.*  Fees should be limited in such a case when the work on one claim is unrelated to the work on another claim.  *Id.*  A court would treat these claims as if they were raised in separate lawsuits. *Id.*  But, the Court noted that some cases involve a common core of facts or are based on related legal theories.  *Id.* at 435.  In such a case, it would be difficult to divide the hours on a claim-by-claim basis.  *Id.*  The Court rejected a mathematical approach to reducing the fees by the ratio of claims on which the plaintiff prevailed.  *Id.* at 435 n.11.

  The Court noted that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Id.*  This excessive could arises "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  *Id.*  In

explaining the possibility of an excessive fee recovery, the Court emphasized that the degree of success obtained is the most critical factor. *Id.*

In this case, most of Plaintiff's claims arose from a common core of facts, namely the speech issues surrounding Plaintiff Lohman, and his furlough as a result of his speech.  Therefore, the Court will not apportion the fees by six-sevenths as requested by the Defendants.  However, the Court will consider the overall degree of success in determining the appropriate fee level.

*F.      Consideration of Settlement Negotiations*

Defendants argue that the Court should consider the settlement negotiations prior to trial in determining a reasonable fee award.  Defendants argue that Plaintiff achieved minimal success, as the Plaintiff's initial demand was five-hundred thousand dollars ($500,000.00) in compensatory and punitive damages, and received a jury verdict of twelve-thousand, two-hundred and five dollars ($12,205.00). (Mehalchick Decl. ¶ 13, May 27, 2008, Doc. 115 Ex. A; O'Brien Decl. ¶ 14, May 27, 2008, Doc. 115 Ex. B; Jury Verdict Doc. 102.) The Defendants offered thirty-thousand dollars ($30,000).  (Mehalchick Decl. ¶ 14, Doc. 115 Ex. A; O'Brien Decl. ¶ 15, Doc. 115 Ex. B.)  After trial commenced, Defendants made three additional offers - twenty-five thousand dollars ($25,000) plus the job of chief of police, fifty-thousand dollars ($50,000) plus the job of chief of police, and seventy-five thousand dollars ($75,000) without the job of chief of police. (Mehalchick Decl. ¶ 16, Doc. 115 Ex. A; O'Brien Decl. ¶ 17, Doc. 115 Ex. B.)  These offers were rejected by the Plaintiff. (Mehalchick Decl. ¶ 16, Doc. 115 Ex. A; O'Brien Decl. ¶ 17, Doc. 115 Ex. B.)  Plaintiff states that she was willing to resolve the matter for seventy-five thousand dollars ($75,000.00) and the position of chief, but the offer was "pulled" at the

19

time Plaintiff was willing to accept.  (Pollick Aff. ¶ 5, June 10, 2008, Doc. 118.)  In contrast, the declarations of Defendants' counsel state that they offered seventy-five thousand dollars ($75,000.00) without the job of chief of police, and not that they offered the seventy-five thousand dollars ($75,000.00) with the job of chief of police.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983) the Supreme Court held that "the most critical factor" in determining a reasonable fee "is the degree of success obtained." *Id.* at 436.  However, the Court specifically stated that prevailing at trial "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."  *Id.*  Here, the question is whether the Court may consider the settlement negotiations in determining the degree of success achieved by Plaintiff's counsel.

Plaintiff argues that demands or offers of settlement cannot be used to reduce an award of attorney's fees.  Plaintiff cites a District Court case from the District of New Jersey, *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442 (D.N.J. 2005), where the court refused to use settlement negotiations in determining attorney's fees based on Federal Rule of Evidence 408.  However, other district courts in the Third Circuit have yet to decide the issue. *See Barbee v. Se. Penna. Transp. Auth.*, Civ. A. No. 04-4063, 2007 WL 403881, at *1 n.2 (E.D. Pa. Feb. 1, 2007) (declining to determine whether Federal Rule of Evidence 408 bars use of settlement in post-trial briefing).  Nor has the Third Circuit Court of Appeals issued a ruling on the use of settlement negotiations in the determination of attorney's fees.  Other courts outside of this Circuit have held that Federal Rule of Evidence 408 does not bar consideration of settlement discussions from an attorney's fee petition.  *See EMI Catalogue Partnership v. CBS/Fox Co.*, No. 86 Civ.

1149 (PKL), 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) (finding that Rule 408 does

not bar consideration of settlement discussions in determining whether to award

attorney's fees under the Copyright Act).

Federal Rule of Evidence 408 states:

(a)  Prohibited uses. – Evidence of the following is not
admissible on behalf of any party, when offered to
prove liability for, invalidity of, or amount of a claim that
was disputed as to validity or amount, or to impeach
through a prior inconsistent statement or contradiction:

(1)  furnishing or offering or promising to furnish – or
accepting or offering or promising to accept – a
valuable consideration in compromising or
attempting to compromise the claim; and

(2)  conduct or statements made in compromise
negotiations regarding the claim, except when
offered in a criminal case and the negotiations
related to a claim by a public office or agency in
the exercise of regulatory, investigative, or
enforcement authority.

(b)  Permitted uses. – This rule does not require exclusion if
the evidence is offered for purposes not prohibited by
subdivision (a). Examples of permissible purposes
include proving a witness's bias or prejudice; negating a
contention of undue delay; and proving an effort to
obstruct a criminal investigation or prosecution.

FED. R. EVID. 408.  In construing Rule 408, the Court finds the logic of *EMI Catalogue* to

be persuasive.  The District Court for the Southern District of New York held that

"evidence of the alleged settlement negotiations is not being offered to prove 'either

liability for or invalidity of the claim or its amount.'  Rather, it is being offered to show that

the Court's rejection of the claim should not merit an award of attorney's fees under the

Court's power of equitable discretion."  *EMI Catalogue*, 1996 WL 280813, at *2.  The

21

court further held that:

> [b]ecause nothing in the language of Rule 408 requires
> exclusion of evidence of settlement negotiations on issues
> "other than liability for or invalidity of a claim or its amount,"
> the Court can consider evidence of settlement negotiations
> where, as here, that evidence is probative of the objective
> unreasonableness of the claim for purposes of determining
> whether to award attorney's fees under the Copyright Act.

*Id.* The Court agrees with the District Court for the Southern District of New York that

evidence of settlement negotiations is not barred in an application for attorney's fees.

The evidence is not used to show liability or validity of a claim or amount. Rather, the

settlement negotiations are to be used as an indicator of the "degree of success

obtained" by Plaintiff's counsel. *Hensley*, 461 U.S. at 436. The fact that Plaintiff

prevailed at trial may not be entirely indicative of counsel's success. *Id.* Therefore, the

Court will consider the settlement negotiations in its determination of Plaintiff's attorney's

fee award.

G.      The Court's Award of Fees

Ms. Pollick's lodestar was calculated to be fifty-nine thousand and sixty dollars and

fifty cents ($59,060.50). The lodestar for her legal assistants is calculated to be three-

thousand, nine-hundred and twenty-six dollars and twenty-five cents ($3,926.25).  This

totals sixty-two thousand, nine-hundred and eighty-six dollars and seventy-five cents

($62,986.75).

In this case, the Court finds that the lodestar, or the product of the reasonable rate

times the reasonable hours, results in an excessive fee award. As per *Hensley*, a court

may consider other facts in determining an award. *Hensley*, 461 U.S at 434. The degree

of success obtained for Ms. Pollick was not as great as she claims. Of the six (6) claims

in the Complaint, only the First Amendment claims went to trial.  Of the claims that were presented to the jury, only one (1) claim returned a verdict in favor of the Plaintiff.

Furthermore, the Court notes that the Plaintiff's counsel may have achieved a much greater level of success if Plaintiff had settled the case.  A seventy-five thousand dollar ($75,000.00) result in settlement is significantly greater than the twelve-thousand, two-hundred and five dollar ($12,205.00) result obtained at trial.  Plaintiff noted that she worked on a contingent fee basis.  Had Plaintiff settled for the seventy-five thousand dollars ($75,000.00), counsel would only have been entitled to about twenty-five thousand dollars ($25,000.00), as contingent fee agreements often call for approximately thirty-three percent (33%).  If she had a contingent fee agreement of forty-percent (40%), she would have received thirty-thousand dollars ($30,000.00).  Likewise, a contingent fee of the jury's verdict would have yielded four-thousand and sixty dollars and thirty-three cents ($4068.33) and four-thousand, eight-hundred and eighty-two dollars ($4882.00) respectively.

Plaintiff's counsel argues that she achieved "excellent" results for her client, especially because this trial followed on the heels of another trial.  The fact that this trial followed another is not relevant.  While she focuses on the fact that she received a jury verdict in her favor, her client received a lesser result from trial than from settlement, and only prevailed on one claim.   In this case, the results obtained at trial do not justify an award of over sixty-thousand dollars ($60,000.00) as calculated by the lodestar, and surely does not justify the requested fees of over one-hundred thousand dollars ($100,000.00).

_____The *Johnson* factors, other than the results obtained factor, also justify a reduced

award.  The skill requisite to perform the services was not particularly rigorous - Plaintiff's

counsel often brings First Amendment retaliation claims, and such a claim is not a new or

novel issue of law.  The claims were not particularly difficult.  In fact, the claims were very

similar to those in the *Guarnieri* case.  Counsel did not demonstrate any special ability in

the prosecution of the case.  The case cannot be considered "undesirable" - there is no

evidence that Mr. Lohman was unable to attract other attorneys to this case.  These

factors weigh in favor of a downward departure from the lodestar.

Based upon the *Johnson* factors, including the results obtained factor, the Court

finds that a downward departure of the lodestar is warranted, and Plaintiff will be awarded

a total of thirty thousand dollars ($30,000.00) in attorney's fees.  Such an award is

comparable to the award Plaintiff's counsel would have received had the Plaintiff settled

for the maximum settlement offer, and substantially greater than one she would have

received under a normal contingent fee of the verdict.

**II.      Costs**

Plaintiff's counsel also submits costs in the amount of six-thousand and sixty-one

dollars and twenty-three cents ($6,061.23).  Plaintiff notes that three-thousand, six-

hundred and eleven dollars and sixty cents ($3,611.60) in costs were in support of both

the *Lohman* and *Guarnieri*.  The Court will divide these costs in half, and one-thousand,

eight-hundred and five dollars and eighty cents ($1805.80) will be awarded in costs for

work done on both cases.

The remaining costs total two-thousand, four-hundred and forty-nine dollars and

sixty-three cents ($2449.63).  Of these costs, Defendants object to the costs of telephone

calls to the press and the purchase of a soda at a deposition.  The Court agrees that

these are inappropriate costs.  Therefore, the Court will reduce these costs by three dollars and sixty-six cents ($3.66).

The Court will award the sum of one-thousand, eight-hundred and five dollars and eighty cents ($1805.80) and two-thousand, four-hundred and forty-five dollars and ninety-seven cents ($2445.97).  In total, the Court will award four-thousand, two-hundred and fifty-one dollars and seventy-seven cents ($4251.77) in costs.

_____

### CONCLUSION

For the reasons stated above, Plaintiff's request for attorney's fees and costs (Doc. 109) will be granted in part and denied in part.

An appropriate Order follows.


July 30, 2008_____                     _____/s/ A. Richard Caputo_____
Date                                       A. Richard Caputo
                                           United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NICHOLAS LOHMAN,

      Plaintiffs,

        v.

DURYEA BOROUGH, et al.,

      Defendants.

NO. 3:05-CV-1423

(JUDGE CAPUTO)

## ORDER

    **NOW**, this  30th   day of July 2008, **IT IS HEREBY ORDERED** that Plaintiff's motion for attorneys' fees and costs (Doc. 109) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    Attorney's fees for Ms. Cynthia Pollick are awarded in the amount of thirty thousand dollars ($30,000.00).

(2)    Costs are awarded in the amount of four-thousand, two-hundred and fifty-one dollars and seventy-seven cents ($4251.77).


_____          /s/ A. Richard Caputo
                                       A. Richard Caputo
                                       United States District Judge